```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW JERSEY
```

```
THERESA D'ARMI,

                    Plaintiff,
                                  Civil No. 14-5650(NLH)
     v.
                                  OPINION
COMMISSIONER OF SOCIAL
SECURITY,
                    Defendant.
```

**APPEARANCES:**

ROBERT ANTHONY PETRUZZELLI
JACOBS, SCHWALBE & PETRUZZELLI, PC
WOODCREST PAVILION
TEN MELROSE AVENUE
SUITE 340
CHERRY HILL, NJ 08003
    *On behalf of Plaintiff*

KATIE M. GAUGHAN
SOCIAL SECURITY ADMINISTRATION
OFFICE OF GENERAL COUNSEL
300 SPRING GARDEN STREET
PHILADELPHIA, PA 19123
    *On behalf of Defendant*

**HILLMAN**, District Judge

    This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits and Supplemental Security Income ("Social Security benefits") under Title II and Title XVI of the Social Security Act.  42 U.S.C. § 401, et seq.  The issue

before the Court is whether the Administrative Law Judge ("ALJ") erred in finding that there was "substantial evidence" that Plaintiff was not disabled at any time since her alleged onset date of disability, August 28, 2011.  For the reasons stated below, this Court will affirm that decision.

I.   BACKGROUND AND PROCEDURAL HISTORY

Plaintiff filed an application for disability benefits, claiming that as of August 28, 2011, her osteoarthritis, melanoma, carpal tunnel syndrome, planter fasciitis, obesity, and mood disorder and anxiety have left her completely disabled and unable to work.  Prior to that date, Plaintiff worked as an office manager.

After a hearing before an ALJ, it was determined that Plaintiff was not disabled.  Plaintiff appealed the decision. The Appeals Council reviewed the ALJ's decision, and upheld it, thus rendering it as final.  Plaintiff now seeks this Court's review.

II.  DISCUSSION

A.   Standard of Review

Under 42 U.S.C. § 405(g), Congress provided for judicial review of the Commissioner's decision to deny a complainant's application for Disability Insurance Benefits.  <u>Ventura v.</u>

Shalala, 55 F.3d 900, 901 (3d Cir. 1995).  A reviewing court must uphold the Commissioner's factual decisions where they are supported by "substantial evidence."  42 U.S.C. §§ 405(g), 1383(c)(3); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Substantial evidence means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.  The inquiry is not whether the reviewing court would have made the same determination, but whether the Commissioner's conclusion was reasonable.  See Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988).

A reviewing court has a duty to review the evidence in its totality.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984).  "[A] court must 'take into account whatever in the record fairly detracts from its weight.'" Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Willbanks v. Secretary of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988) (quoting Universal Camera Corp. V. NLRB, 340 U.S.

3

474, 488 (1951)).

The Commissioner "must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)). The Third Circuit has held that an "ALJ must review all pertinent medical evidence and explain his conciliations and rejections." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000). Similarly, an ALJ must also consider and weigh all of the non-medical evidence before him. Id. (citing Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)); Cotter v. Harris, 642 F.2d 700, 707 (3d Cir. 1981).

The Third Circuit has held that access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). Although an ALJ, as the fact finder, must consider and evaluate the

4

medical evidence presented, <u>Fargnoli</u>, 247 F.3d at 42, "[t]here is no requirement that the ALJ discuss in its opinion every tidbit of evidence included in the record," <u>Hur v. Barnhart</u>, 94 F. App'x 130, 133 (3d Cir. 2004). In terms of judicial review, a district court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." <u>Williams</u>, 970 F.2d at 1182. However, apart from the substantial evidence inquiry, a reviewing court is entitled to satisfy itself that the Commissioner arrived at his decision by application of the proper legal standards. <u>Sykes</u>, 228 F.3d at 262; <u>Friedberg v. Schweiker</u>, 721 F.2d 445, 447 (3d Cir. 1983); <u>Curtin v. Harris</u>, 508 F. Supp. 791, 793 (D.N.J. 1981).

    **B.    Standard for Disability Insurance Benefits**

The Social Security Act defines "disability" for purposes of an entitlement to a period of disability and disability insurance benefits as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. <u>See</u> 42 U.S.C. § 1382c(a)(3)(A). Under this definition, a Plaintiff qualifies as disabled only if his physical or mental impairments are of such

5

severity that he is not only unable to perform his past relevant work, but cannot, given his age, education, and work experience, engage in any other type of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B) (emphasis added).

The Commissioner has promulgated regulations for determining disability that require application of a five-step sequential analysis. See 20 C.F.R. § 404.1520. This five-step process is summarized as follows:

1. If the claimant currently is engaged in substantial gainful employment, he will be found "not disabled."

2. If the claimant does not suffer from a "severe impairment," he will be found "not disabled."

3. If the severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last for a continuous period of at least twelve months, the claimant will be found "disabled."

4. If the claimant can still perform work he has done in the past ("past relevant work") despite the severe impairment, he will be found "not disabled."

5. Finally, the Commissioner will consider the claimant's ability to perform work ("residual functional capacity"), age, education, and past work experience to determine whether or not he is capable of

6

>performing other work which exists in the national economy. If he is incapable, he will be found "disabled." If he is capable, he will be found "not disabled."

20 C.F.R. § 404.1520(b)-(f). Entitlement to benefits is therefore dependent upon a finding that the claimant is incapable of performing work in the national economy.

This five-step process involves a shifting burden of proof. See Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983). In the first four steps of the analysis, the burden is on the claimant to prove every element of his claim by a preponderance of the evidence. See id. In the final step, the Commissioner bears the burden of proving that work is available for the Plaintiff: "Once a claimant has proved that he is unable to perform his former job, the burden shifts to the Commissioner to prove that there is some other kind of substantial gainful employment he is able to perform." Kangas v. Bowen, 823 F.2d 775, 777 (3d Cir. 1987); see Olsen v. Schweiker, 703 F.2d 751, 753 (3d Cir. 1983).

**C.   Analysis**

In this case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability (Step One). The ALJ next found that Plaintiff's

7

osteoarthritis, melanoma, carpal tunnel syndrome, planter fasciitis, obesity, and mood disorder and anxiety were severe (Step Two).[1]  The ALJ then found that Plaintiff's impairments did not meet the medical equivalence criteria (Step Three).  At Step Four, the ALJ found that even though Plaintiff was not capable of performing her previous jobs as an office manager, administrative secretary, and receptionist, Plaintiff had the residual functional capacity (RFC) to perform other jobs at the light work level, such as office helper, information desk clerk, and assembler, which are in significant numbers in the national economy (Step Five).

Plaintiff challenges three aspects of the ALJ's decision.  First, she contends that the ALJ erred in discounting the "statement of claimant's ability to perform work-related physical activity" form filled out by her treating physician in determining Plaintiff's residual functional capacity ("RFC") and her capability of performing the duties of light work.  Second, Plaintiff argues that the ALJ did not properly consider her mental impairments with respect to her RFC.  Third, Plaintiff contends that the ALJ did not properly assess her testimony and

---

[1] The ALJ found that her seizure disorder and sleep apnea were not severe.  Plaintiff has not challenged this finding.

erred in his credibility determination.  The Court finds that substantial evidence supports the ALJ's determination, and the ALJ therefore did not err in his decision.

In a thorough and detailed manner, the ALJ articulated the medical evidence and Plaintiff's own statements about her abilities and limitations.  He noted the following:

- Plaintiff cooks complete meals with several courses on a daily basis;
- Plaintiff takes care of her two cats;
- Plaintiff does the laundry, vacuums the rugs, mops floors and cleans 2 1/2 bathrooms;
- Plaintiff drives a car;
- Plaintiff grocery shops twice a week for two to three hours at a time;
- Plaintiff was able to manage her finances;
- Plaintiff does crafts, plays bingo and plays with her grandchildren as much as possible;
- Plaintiff makes dinner for her children and grandchildren on Sunday;
- Plaintiff visits her family and neighbors during the week;
- Plaintiff has no problems with getting along with family, friends or neighbors;

9

- Plaintiff was an excellent employee and she never had issues with her bosses or other employees;

- Plaintiff could follow written instructions "very well" and spoken instructions "well";

- Plaintiff had no problems with paying attention and that she finishes what she starts;

- When the claimant was seen at the Social Security Field Office on January 9, 2012, the claims interviewer noted that the claimant had no problems with understanding, coherency, concentrating, answering questions and she had no problems with sitting, standing, walking, writing or using her hands; and

- Plaintiff told Dr. Mosby, the consultative physician, that she did light household chores, that she can go shopping alone and unsupervised, and that she has a driver's license and can drive, and that her interests and hobbies were cooking, fishing and travel.[2]

---

[2] Plaintiff argues that these are activities she was able to engage in at the outset of the adjudication of her claim for disability benefits, but that her condition has progressively become worse. The ALJ was tasked with determining whether plaintiff was disabled as of August 28, 2011, and, as explained herein, the substantial evidence supports his conclusion that plaintiff was capable of unskilled, light work. It does not appear that Plaintiff is prohibited from filing a new claim for

10

(R. at 73.)

Weighed against these abilities, the ALJ discussed Plaintiff's limitations. He noted Plaintiff's testimony about her pain, which she says is usually 8 out of 10 on the pain scale, and that the pain is worse in the cold weather. He recounted that Plaintiff stated that she cries a lot, has mood swings, she is anxious and nervous, although she does not experience panic attacks, and that Xanax helps, but makes her tired. The ALJ also noted that Plaintiff complains of not being as sharp as she used to be, that she can only focus for 30 minutes at a time, and that she needs breaks to finish tasks. He also detailed her treatment for melanoma and how she feels as a result, as well as how her carpal tunnel and obesity affect her functioning.

Based on these, and many other, specific references to Plaintiff's condition, it cannot be found that the ALJ improperly discounted Plaintiff's statements about her abilities and limitations. See 20 C.F.R. § 404.1529(c) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or

---

disability benefits based on her current condition.

11

nontreating source, or other persons about how your symptoms affect you.  We also consider the medical opinions of your treating source and other medical opinions. . . . ."); Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999) (explaining that allegations of pain and other subjective symptoms must be supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if he does not find it credible as long as he explains why he is rejecting the testimony); SSR 96-7p ("No symptom or combination of symptoms can be the basis for a finding of disability, no matter how genuine the individual's complaints may appear to be, unless there are medical signs and laboratory findings demonstrating the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms.").

  With regard to Plaintiff's argument that the ALJ improperly discounted Plaintiff's treating physician Dr. DiPiero's "ability to work assessment" because it was just a "check the box" form (R. at 74), the ALJ's assessment of Dr. DiPiero's report also considered that there was little supporting evidence to support his findings, and his selections on the form were inconsistent with his treatment notes and the treatment notes of other

12

doctors. Dr. DiPiero's treatment notes, as well as the other treating and consultative doctor notes, as detailed earlier in the ALJ's decision (R. at 69), demonstrate that Dr. DiPiero's "checks" in the "boxes" on the form were not consistent with the medical evidence.[3] Although it is true that Social Security regulations provide that a treating physician will be afforded controlling weight as to the nature and severity of a claimant's impairment, that weight is not automatic: only if the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence of record, will the treating physician's opinion carry more weight than any other doctor. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); SSR 96-2p. These factors are not met here.

---

[3] The form lists a variety of plaintiff's abilities, including her ability to "frequently" bend, stoop, squat, crawl, climb, and reach above shoulder level. Dr. DiPiero also notes that plaintiff does not have any restrictions in activities involving unprotected heights, being around moving machinery, or exposure to marked changes in temperature and humidity. (R. at 598.) Some of these "abilities" actually support the ALJ's determination that plaintiff is capable of light work, while others conflict with the medical evidence. For example, the ALJ found that the evidence demonstrated that plaintiff could not work in environments with extreme cold or ones that involve heavy machinery, even though Dr. DiPiero did not restrict these conditions on the form. (R. at 71.) These, and other, inconsistencies support the ALJ's rejection of the "check the box" form.

Next, with regard to Plaintiff's challenge to the ALJ's assessment of Plaintiff's mental impairment as it affects her residual functional capacity in combination with her physical impairments, the ALJ discounted the consultative physician's Global Assessment Functioning ("GAF") score of 50 because it was inconsistent with the other information contained in the doctor's report.  A GAF of 41-50 represents "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."[4] DSM-IV-TR 34.  The ALJ properly articulated the inconsistencies in the doctor's report to support why he did not credit this GAF assessment (R. at 74-75), and also noted that Plaintiff has never been under any form of psychiatric care, and she has never experienced any periods of decompensation (R. at 68, 71).  This is the appropriate methodology to discount certain medical

---

[4] A GAF of 60/51 represents "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)"; a GAF of 70/61 represents "Some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM–IV-TR 34.
.

assessments.  See Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999) (citations omitted) ("When a conflict in the evidence exists, the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reason.  The ALJ must consider all the evidence and give some reason for discounting the evidence she rejects."); Diaz v. Commissioner, 577 F.3d 500, 505-06 (3d Cir. 2009) ("In evaluating medical reports, the ALJ is free to choose the medical opinion of one doctor over that of another.").

With regard to Plaintiff's argument that the ALJ erred in finding at Step Two that Plaintiff's mental impairments were "severe," but then ultimately does not find them to be "severe" in the RFC analysis at Step Four, what is considered "severe" at Step Two is different from the Step Four analysis of the severity of a claimant's disability.  The Third Circuit has explained,

> The burden placed on an applicant at step two is not an exacting one.  Although the regulatory language speaks in terms of "severity," the Commissioner has clarified that an applicant need only demonstrate something beyond "a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28  . . .  In short, the step-two inquiry is a *de minimis* screening device to dispose of groundless claims.

McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d

15

Cir. 2004) (citations and quotations omitted).  Thus, when the ALJ determined that Plaintiff's mental impairment at Step Two was "severe," it was in the context of permitting Plaintiff's claim to move along in the sequential step analysis, rather than constituting a finding as to the degree that impairment disabled Plaintiff, which the ALJ did at Step Four.  Accordingly, it cannot be found that the ALJ erred in his assessment of Plaintiff's mental impairment and how it impacted her RFC.

Finally, with regard to the ALJ's assessment of Plaintiff's residual functional capacity to perform light work, an ALJ does not need to give any particular weight to a treating physician's conclusions about a claimant's RFC or ability to work.  20 C.F.R. § 404.1527(e) (explaining that the issue of the RFC assessment is reserved for the Commissioner, and a physician's opinion thereon is not entitled to any special significance).  Moreover, an ALJ is not required to blindly follow a treating physician's conclusions.  <u>Brownawell v. Commissioner Of Social Security</u>, 554 F.3d 352, 355 (3d Cir. 2008).  Thus, because, as discussed above, the ALJ properly supported his decision to credit the bulk of evidence in the record, and discount inconsistent evidence in the record, in order to conclude that Plaintiff was capable of performing light work with several,

16

specific limitations,[5] the Court cannot find that the ALJ erred in his decision.

### III. Conclusion

For the reasons expressed above, the ALJ's determination that Plaintiff is not totally disabled as of August 28, 2011, is supported by substantial evidence. Accordingly, the decision of the ALJ is affirmed. An accompanying Order will be issued.

Date: July 31, 2015       s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.

---

[5] The ALJ determined, "After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can only occasionally climb ramps and stairs; and she cannot climb of ropes, ladders, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl; and she can frequent handle, finger, and feel; but she must avoid concentrated exposure to extreme cold and hazards such as unprotected heights and moving machinery. She is further limited to unskilled work involving routine and repetitive tasks; in a low stress environment, defined as occasional changes in the work setting and occasional independent decision-making; she can have frequent interaction with coworkers, supervisors, and the public; and she would be absent from work 1 day per month." (R. at 71.)

17